*City Solicitor*, for plaintiff in error.

*Geo. W. Harding*, for defendants in error.

---

## FIXING THE AMOUNT OF A STREET ASSESSMENT.

[Circuit Court of Lucas County.]

JOSEPHINE LIPPERT v. CITY OF TOLEDO ET AL.[*]

Decided, April 2, 1906.

*Streets—Improvement of—Assessing Ordinance—Preliminary Proceedings—Apportioning the Cost—Municipal Corporations—Injunction.*

1. It is not necessary that council shall determine in advance of the assessing ordinance the proportion of the cost and expense of making a street improvement that is to be assessed upon the property abutting thereon.
2. The fact that council may have indicated in the resolution and ordinances adopted and passed preparatory to the making of the improvement, the proportion it intended to assess on the abutting property, does not bar it from designating a different proportion in the assessing ordinance, provided it is within the limitations fixed by the statute.

---

[*] Affirmed by the Supreme Court without report (*Lippert* v. *Parker, Treasurer*), February 19, 1907.

Error to Lucas Common Pleas Court.

B. A. Hayes, for plaintiff in error, cited the subjoined authorities:

*Bloom* v. *Xenia*, 32 Ohio St., 461; *Cincinnati* v. *Seasongood*, 46 Ohio St., 296; *Hunter* v. *Earl*, 51 Ohio St., 573; *Elyria Gas & Water Co.* v. *Elyria*, 57 Ohio St., 374; *Comstock* v. *Nelsonville*, 61 Ohio St., 288; *Scott* v. *Toledo*, 36 Fed. Rep., 385; *Freeman* v. *Hunter*, 7 C. C., 117; *Elyria Gas & Water Co.* v. *Elyria*, 14 C. C., 219.

PARKER, J.; HAYNES, J.; and WILDMAN, J.; concur.

Josephine Lippert filed a petition in the court of common pleas, setting forth the facts respecting a pavement of Canton street and the assessment of a part of the costs thereof upon her property, and praying that a part of the assessment might be enjoined. The court of common pleas sustained a demurrer to this petition, and judgment was entered and the case is brought into this court for the reversal of that judgment.

It appears that the council proceeded in the regular and ordinary way to make this improvement and to assess the cost thereof. It is claimed, however, that when they came to pass the ordinances assessing the cost, they assessed more of the cost upon the plaintiff and other abutting owners than was authorized or resolved upon by the ordinance preceding the assessment ordinance.

Graff M. Acklin was also a plaintiff in the case and, upon the court's sustaining the demurrer to the petition, Graff M. Acklin asked leave to amend and the case was divided. It is brought up by Josephine Lippert, but is pending in the court below on behalf of Graff M. Acklin, he having amended his petition.

The averments respecting the resolution and ordinance fixing the amount that should be assessed upon the property abutting upon the improvement are as follows:

"Paragraph fourth. Plaintiffs further say that on the fourteenth day of March, 1904, said council passed an ordinance for the improvement of said Canton street from Cherry street to Jackson street, by repaving the central forty feet thereof;

that the fourth section of said ordinance provided, 'that the cost and expenses of said improvement, less one-half (½) the cost of repaving and less one-fiftieth (1-50) of the cost of paving and the cost of intersections, and except the cost of that portion of said improvement lying between the outer rails of the tracks of the Toledo Railways & Light Company, if any such tracks there be, shall be assessed in proportion to the benefits which may result from the said improvement, upon all the lots and lands bounding and abutting upon said Canton street from Cherry street to Jackson street, and of printing and publishing notices, resolutions and ordinances required, together with the cost of serving said notices, the cost of construction, and the interest on bonds issued in anticipation of the collection of deferred assessments, and all other necessary expenditures.'

"Paragraph fifth. Plaintiffs further say that on the sixteenth day of May, 1904, said council passed an ordinance determining to proceed with the improvement of Canton street from Cherry street to Jackson street, by repaving the central forty feet thereof; that the third section of said ordinance provided, 'that there be levied and assessed upon the lots and lands hereinafter described, the costs and expenses of said improvement, less one-half (½) the cost of repaving and less one-fiftieth (1-50) of the cost of paving and the cost of intersections, and except the cost and expense of that portion of said improvement lying between the outer rails of the tracks of the Toledo Railways & Light Company.' "

The tracks of the railroad company mentioned in the petition extend along the center of Canton street.

The contention of plaintiff in error is that, under the plan of assessing outlined, or formulated and provided for in this legislation, this being a case of repaving, one-half of the whole cost should be ascertained and laid upon the city, and from the other half should be deducted the amount apportioned to the railroad company and the amount of intersections, and the result would be, as we find from computations made and presented to us, the cost of the improvement being $41,472.54, that after deducting one-half of that total cost, $20,736.27, and then the cost of intersections, $5,887.20, and the cost of the portions between the outer rails of the street railroad which would fall upon the street railroad, amounting to $14,542.40, there would remain to be assessed upon the abutting property $306.67. It is contended, however, upon the part of the city that this is

not the true construction of the legislation; that what the council must have intended, and what they evidently intended, was the thing that is usually done in such cases by the council; to-wit, the deducting from the total cost of $41,472.54 of these items of the cost of intersections and the cost of the portion between the outer rails of the street railroad, which would leave $21,042.94 to be divided between the city and property owners, one-half to be paid by each, or $10,521.47 to be assessed upon the abutting property. And it is pointed out or suggested to us in argument, and we suppose it is true, though we have no other evidence of the fact, that on Monroe street the same system was adopted, the same language was used in the resolutions and ordinances, with the result, if the contention of the plaintiff in error is upheld, that instead of the property owners paying anything for the pavement they would really have some $5,000 or $6,000 coming to them from the city on account of its laying the paving in front of their property. I suppose that could hardly be true. The result might be, however, that they would be relieved from paying anything whatever if the rule and construction contended for by counsel for plaintiff were upheld.

I shall read one of these paragraphs again, since it has been seen what a startling result would flow from sustaining the contention of plaintiff in error. I read from the ordinance of May 16, 1904:

"That there be levied and assessed upon the lots and lands hereinafter described the cost and expenses of said improvement less one-half (½) the cost of repaving and less one-fiftieth (1-50) of the cost of paving and the cost of intersections, and except the cost and expenses of that portion of said improvement lying between the outer rails of the tracks of the Toledo Railways & Light Company."

It seems to us that that language is entirely clear, and that it does not accomplish what it is said upon the part of the city it was the intention of the council to accomplish, but that the whole cost of the intersections and of the paving of the part the cost of which falls upon the railway company is to be deducted from the one-half of the cost of repaving which is to fall upon the property owners.

We are told by the solicitor that this language of the ordinance results from trying to adopt a form in use when the statute did not contain the provision that "whenever special assessments have been levied and paid for the improvement of any street or other place the property so assessed shall not again be assessed for more than one-half the cost and expense of repaving or repairing such street or other place unless the grade of the same is changed"; and that to meet such conditions the old form was changed by inserting the words "less one-half the cost of repaving and," as now found in the ordinances of March 14, 1904, and May 16, 1904. This seems to be the true explanation of the peculiar form now in use. Nevertheless, we must construe the language as we find it, and assume that it was meant by the council to have its usual and ordinary meaning. It will be readily seen that the old form was and is suitable for a case of original construction of an improvement, where the purpose is to except certain items from the whole cost and assess the remainder on abutting property, while the new form does not express a purpose to deduct such items from the whole cost and assess one-half the remainder upon the abutting property.

But it appears from the petition that, notwithstanding this, the council did subsequently pass an ordinance in which it apportioned the cost differently; that is to say, in the way that the solicitor says it was designed from the first to apportion the cost, and therefore we have to pass upon the validity of that assessment, which amounted to a radical change of base upon the part of the council.

The question is, might they lawfully do that or were they bound to follow out the scheme and plan and the rate of proportions set forth in the preliminary legislation, or the earlier legislation? We are cited to the case of *Freeman* v. *Hunter*, 7 C. C., 117, decided by this circuit court at its September term, 1892. That was a case where property owners were resisting part of the assessment on the ground that there had been included, in the amount assessed, items that could not be lawfully assessed against their properties. Indeed, the assessment which was there attacked was made up entirely of items of a

character which they declared could not be lawfully assessed upon their property. Prior to that time assessments had been made for the ordinary cost of the improvement, to which no resistance was made, but when it came to the last assessment it covered awards of damages on account of property taken, by changing the grade of the street, amounting to over $10,000, and court costs in the cases where these amounts were determined, amounting to $352 and some odd cents, the witness fees, the interest, and so forth, the whole amount being $12,468,42. Now, the chief contention of the property owners in that case was, that these were items that could not be lawfully assessed as a part of the cost of the improvement, and that was the question which was discussed by the judge of this court who delivered the opinion. In starting out to discuss it, he says, page 691:

"The question as to the constitutionality of the proceedings whereby these assessments were made, being of prime importance, will be first considered."

And he proceeds to discuss it. That seems to imply a promise that he would come back to a consideration of the other question, but he did not, and one of the points made by the property owners complaining, but which was not discussed by the court, was stated as follows:

"That even granting the power of the council originally to have assessed for any or all of said items, it did not determine to do so at the proper time; but, on the contrary, indicated by its action that it would not so assess them, and exhausted its power of assessing the cost and expenses of said improvement in making its said assessment of September 5, 1890."

The case went to the Supreme Court, and there is a very brief mention of the point upon which it was decided by the Supreme Court, found in *Hunter* v. *Earl*, 51 Ohio St., 573, as follows:

"Judgment affirmed on the ground that the ordinance of July 18, 1889, did not indicate an intention on the part of the city to assess on the abutting property, any part of the cost included in the assessment ordinance of October 27, 1890; nor was any opportunity given the parties assessed to be heard on or in opposition to the same."

So that what was regarded by the parties and by the court below as the principal question in the case was not passed upon by the Supreme Court at that time.

In a later case it did hold, as this court held in that case, that the assessing of such items as were objected to there was unlawful; that the law which appeared to authorize it was in that respect unconstitutional.

Council for the plaintiff here cites this decision by the Supreme Court in support of his contention that the council, having declared and ordained in its ordinance of March 14, 1904, and again in its ordinance of May 16, 1904, that the assessment was to be made upon the basis which would relieve the property owners from paying any more than $306.67, it was not competent or lawful for the council afterward to change base upon this matter and require the property owners to pay $10,521.47. It will be observed that the Supreme Court states the concurrence of the two things or elements entering into that case as the reason why the subsequent assessment ordinance was objectionable and invalid: First, that the council had not indicated by the earlier ordinance an intention to assess these items upon the property; and, secondly, that no opportunity was given to the parties assessed to be heard on or in opposition to the same. We do not understand it to be true in this case that the parties were not given an opportunity to be heard in opposition to this assessment of $10,521.47; and so far as appears from the petition the council proceeded in the ordinary way to publish notice of the assessment, and property owners were given an opportunity to come in and be heard upon it. Does the mere circumstance then, that in the earlier ordinance the council had resolved upon a course which would result in less burden to property owners, forestall and hinder or prevent the council from afterward making an assessment which, it must be conceded, would be a lawful assessment if the steps taken were regular?

Upon looking into the statutes, we do not find that it devolved upon the council, or that it is required of the council that it shall, by these earlier ordinances under circumstances like those set forth in the petition, declare the amount or the proportion

that is to be assessed against the property owners. · It should be remarked· that there is no element of contract or estoppel here.  The resolution and ordinances were passed by a sufficient vote of the council, so that no petition for the improvement was needed, and no petition was in fact presented.  The council proceeded upon its own initiative.  The property owners were bound to submit to any lawful thing that the council might do in the premises.

Under certain circumstances, as set forth in Section 61 of the code recently adopted, passed on October 22, 1902 (96 O. L., 42; Revised Statutes 1536-221), a petition would be required. Section 50, 96 O. L., 39 (Revised Statutes 1536-210), provides that the cost of such an improvement may be assessed by either one of three distinct methods:

"First.  By a percentage of the tax value of the property assessed.

"Second.  In proportion to the benefits which may result from the improvement; or

"Third.  By the foot frontage of the property bounding and abutting upon the improvement."

We understand that the assessment was made in this case upon the basis set forth in the second paragraph, i. e., in proportion to the benefits.  Section 51, 96 O. L., 39 (Revised Statutes 1536-211), provides, among other things, that there shall be a resolution declaring the necessity of the improvement and that—

"Not earlier than two weeks after the passage of said resolution, and before any such improvement is begun, council shall by ordinance, * * * determine the general nature of the improvement, what shall be the grade of the street, alley or other public place to be improved, as well as the grade or elevation of the curbs, and approve the plans, specifications, estimates and profiles for the proposed improvement."

And then this:

"Council shall also determine in said ordinance the method of the assessment, the mode of payment therefor, and shall declare whether or not bonds shall be issued in anticipation of the collection of the same."

The methods of assessment are required to be set forth in such ordinance, but we do not understand that the setting forth of the amount or proportion to be assessed against the abutting property, is any part of the method of assessment. The methods are what are mentioned in this statute, i. e., by a percentage of the tax value of the property assessed, or in proportion to the benefits which may result from the improvement, or by the foot frontage of the property bounding and abutting upon the improvement. Those things must be declared by such ordinance, but the matter of declaring the amount of the whole cost to be assessed upon the abutting property may be deferred.

Section 53, 96 O. L., 40 (Revised Statutes, 1536-213), provides a limitation of assessments. First comes the general provision that in all cases of assessment the council shall limit the same to the special benefits conferred upon the property assessed. Then follow the provisions applicable to the case under consideration:

"In all municipalities the corporation shall pay such part of the cost and expense of improvements for which special assessments are levied as council may deem just, which part shall not be less than one-fiftieth of all such cost and expenses; and in addition thereto, the corporation shall pay the cost of intersections; provided, that whenever special assessments have been levied and paid, for the improvement of any street or other public place, the property so assessed shall not again be assessed for more than one-half the cost and expense of repaving or repairing such street or other public place unless the grade of the same is changed."

This was a case coming under this last provision, a case where the street was being reimproved, where the property owners had already been once assessed for an improvement of this character. It seems that it was within the power of the council, under the circumstances shown here, to have made this assessment $306.67, and, as we construe the two ordinances mentioned, they set out with that purpose and intention; but we do not understand that in so doing they had exhausted their power in the premises, but we hold that they might lawfully do subsequently what they did, i. e., resolve upon putting more of this cost, but not exceeding $10,521.47, upon the abutting property; that

they might do that without formally repealing or amending any part of the ordinances theretofore adopted, and by the passing of ordinances that are irreconcilable therewith and which declare a different intention. That is the way they appear to have proceeded here.

After they passed this assessing ordinance, for aught that appears, they proceeded regularly under Section 68, 96 O. L., 44 (Revised Statutes 1536-228), to appoint a board to report estimates of the assessment, and under Section 69, 96 O. L., 44 (Revised Statutes 1536-229), to fix a day for the equalization of assessments, and Section 69, 96 O. L., 44, provides that when the assessment is confirmed by the council it shall be complete and final and shall be recorded in the office of the clerk of the council. Among these sections we do not find any provision for the publication of a notice to the parties interested or for the filing of objections to the assessment, but those provisions are found in Revised Statutes, 2278, 2279 (Revised Statutes, 1536-259; 1536-260) and by Section 94, 96 O. L., 51 (Revised Statutes, 1536-257), of this code they are preserved and kept in force, to-wit:

"All assessments provided for in this act shall be subject to the provisions of Sections 2278, 2279 (1536-259, 1536-260)."

We think that under the circumstances this legislation of the council whereby the change of proportion of the assessment to be paid by the abutting owners was made which resulted in their being assessed $10,521.46, instead of $306.67, was regular and legal and should stand. For that reason we hold that the petition fails to set forth a cause of action, and that the judgment of the court of common pleas should be affirmed, and it is affirmed accordingly.

*B. A. Hayes,* for plaintiff in error.

*C. S. Northrup,* City Solicitor, and *O. W. Nelson,* for defendants in error.